IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BOBBIE MCNEILL, #359257           *
        Plaintiff,
   v.                              *   CIVIL ACTION NO. WDQ-10-3116

WARDEN JOHN WOLFE[1]              *
JOHN DOE 1
JOHN DOE 2                        *
OFFICER TAHIR BASHIR
JOHN DOE 3                        *
JANE DOE 1
TEREASA FOLK                      *
SYRESH MENON
WARDEN GREGG HERSHBERGER          *
KRISTI WHITEHAIR
COMMISSIONER OF CORRECTION        *
SAFETY DEPARTMENT SUPERVISOR
JENIFER RANKIN                    *
CORRECTIONAL MEDICAL SERVICES,
   INC.                           *

        Defendants                *

MEMORANDUM

Bobbie McNeill has filed a civil rights complaint under 42 U.S.C. § 1983 against Correctional Medical Services ("CMS") and its employees as well as Maryland Division of Correction (DOC) officials and personnel employed at the Jessup Correctional Institution ("JCI") and Roxbury Correctional Institution ("RCI"). McNeill, who is self-represented, seeks injunctive relief (including the termination of several medical employees, assignment to special housing, and immediate knee surgery) and compensatory and punitive damages. *Id*. Pending are Motions to Dismiss or in the Alternative for Summary Judgment filed by counsel for Defendants (ECF Nos. 17 and 20) and Plaintiff's oppositions thereto. ECF Nos. 19, 25 and 26. For the

---

[1] The Clerk shall amend the docket to reflect the full and complete spelling of Defendants' names.

following reasons, the dispositive motions will be granted in part and Plaintiff will be provided an opportunity to request appointment of counsel.

I.   LEGAL ANALYSIS

   A. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

   B. Eighth Amendment Claims

As an inmate claiming denial of medical care in violation of the Eighth Amendment, McNeill must prove two elements: one objective and one subjective. First, he must satisfy the objective element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is

satisfied, Glenn must then prove the subjective element by showing "deliberate indifference" on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

II. FACTUAL ANALYSIS

A. Claims Against the Correctional Defendants

The Correctional Defendants (JCI Warden John Wolfe, RCI Warden Gregg Hershberger, the Commissioner of Correction and Correctional Officer Tahir Bashir) do not dispute McNeill's assertion that he was housed briefly at JCI after his June 1, 2010 knee surgery at Bon Secours Hospital ("BSH") then returned to his assigned prison, RCI. They do dispute McNeill's claims that: unidentified JCI personnel negligently failed to bolt his bed to the floor and thus caused his post-operative fall; Wolfe and the Commissioner failed to address his administrative remedy procedure ("ARP") complaints concerning one missed dose of methadone submitted on June 8, 2010; Hershberger likewise failed to respond to his complaints about health care at RCI; unidentified JCI officers failed to respond when he told them he fell and needed to be seen by medical personnel; and Bashir required him to be handcuffed and to walk to the medical

department and back to his temporary cell despite his request for a wheelchair, causing further damage to his knee.

Whether McNeill fell during his brief stay at JCI remains in dispute. Assuming he did fall, his negligence claim does not constitute a constitutional or federal statutory violation, and thus cannot be brought in this Court pursuant to the Civil Rights Act. *See Daniels v. Williams*, 474 U.S. 327 (1986).[2] His claim against both Wardens for failing to investigate his ARP claim concerning denial of pain medication likewise is subject to dismissal. The ARP, submitted at RCI, was transferred to JCI for investigation. The paperwork was misplaced and never seen by JCI's Warden. After the ARP was discovered, it was granted in part; now, procedures ensure that patient-specific narcotic medications will be transported with the prisoner from one prison to another. ECF No. 20, Exhibit B at ¶¶ 2-3 and attachments thereto.

McNeill's complaints about JCI correctional officers, including Bashir, also fail. Even assuming two unidentified officers failed to take him to the medical department immediately after he arrived from BSH, Officer Bashir did escort McNeill to the medical department later that evening. Bashir handcuffed McNeill in front, rather than from behind, while escorting him, in compliance with prison policy. McNeill's claim that Bashir refused to provide him a wheelchair (a fact disputed by Bashir), is belied by the medical record; the examining nurse did not consider Bashir's concerns about his knee sufficiently serious to require immediate evaluation by a physician. ECF No. 20, Exhibit A, ¶¶ 2-6.

While it is unfortunate that McNeill missed one dose of previous-prescribed methadone and may have fallen during his brief stay at JCI's transportation wing, he has failed to adduce a factual and legal basis of liability against the named Correctional Defendants.

---

[2] Plaintiff may of course choose to seek money damages from any responsible parties by means of state administrative and court proceedings.

B. Claims Against the Medical Defendants

McNeill's claims against the Medical Defendants are more compelling. The Medical Defendants assert--by submission of Dr. Suresh Menon's affidavit and McNeill's medical records--that constitutionally adequate medical care has been afforded to McNeill.[3] The Correctional Defendants assert that they are not liable for the medical care provided by the contractual health care provider and that their conduct in no way contributed to McNeill's health problems. The following information has been provided.

McNeill has a history of hypertension and bipolar disorder. Prior to June 1, 2010, he was receiving 10 mg. of methadone three times a day for complaints of knee pain because he told Dr. Menon that Ultram did not ease the pain.[4] ECF No. 17, Exhibit A, ¶ 4. On June 1, 2010, McNeill underwent outpatient surgery at BSH, where Dr. Ashok Krishnaswamy repaired ligaments in the left knee. McNeill was discharged on the day of surgery, arriving at Jessup Correctional Institution (JCI) where he received a dose of Keflex (an antibiotic) prior to his return to RCI later that day. Tylenol #3 with codeine was prescribed for pain. There is no indication in the medical record that McNeill complained of falling as a bunk slid out from under him during the hours he was held at JCI. *Id.*, Exhibit A at ¶ 5.

On June 2, 2010, McNeill was examined by Licensed Practical Nurse Tereasa Folk who removed the Ace bandage, assessed the surgical site, and reapplied the bandage. He did not

---

[3] Defendant Correctional Medical Services, Inc. ("CMS") argues that the Complaint should be dismissed against it because as a corporate entity it cannot be held liable under 42 U.S.C. § 1983. ECF No. 17 at 2-3. The Court agrees. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. See *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009). Therefore, summary judgment shall be entered against Defendant CMS.

[4] Medical records indicate McNeill did not receive methadone during the five days prior to surgery, and may have missed additional doses immediately after surgery. There is no record evidence that McNeill complained to medical personnel about withdrawal symptoms as a result in this interruption of medication. ECF No. 17, Exhibvit A, ¶ 4.

complain to Folk about falling the previous day. Menon continued McNeill's prescriptions for Keflex and Tylenol #3,[5] and submitted a request for McNeill's post-surgery follow-up at BSH. Later that day, McNeill submitted a sick call slip indicating he had fallen at JCI and reinjured the left knee. *Id.*, Exhibit A at ¶ 6.

On June 3, 2010, the dressing was again changed. Later that day McNeill submitted a sick call request complaining of unbearable pain, inability to sleep, and swelling of the left knee. The following day McNeill was brought to the dispensary because his dressing was loose. Folk removed the dressing, noted the sutures were intact and the wound edges were together, and the area was not bleeding or red. Folk cleaned the area and covered the sutures with bandaids. *Id.*, Exhibit B at 14-16.

On June 9, 2010, the sutures were removed. The following day McNeill began receiving Tylenol without the codeine additive. *Id.*, Exhibit B at 14, 18, 20 and 86.

On June 21, 2010, McNeill submitted a sick call slip complaining of a post-surgical fall and severe pain that was not relieved with the prescribed medication. On June 25, 2010, Physicians Assistant Kevin McDonald examined McNeill and found no clicking, crepitus, tingling or popping in the knee. McDonald opined that McNeill may have torn his anterior cruciate ligament ("ACL") and prescribed a cane, knee brace, and salslate (a non-steriodical anti-inflammatory drug or NSAID) for pain. McDonald also submitted a request for a pain management consultation. *Id.*, Exhibit B at 21-26.

---

[5] Medical records indicate that at the latest McNeill again began receiving methadone three times daily on June 7, 2010. ECF No. 17, Exhibit B at 18, Report of Tracy Whittington, RN. When distributing methadone, health care personnel would crush the pill and mix it into water which was then given to the prisoner. On September 20, 2010, Licensed Practical Nurse Kelly Teach was told by a prisoner on McNeill's tier that McNeill was selling his methadone to others. That same day, based on the information, Teach asked McNeill to give her back the cup of water after he drank it. McNeill became angry but returned the cup, which had some water and methadone residue in it. As this suggested McNeill was saving the methadone-laced water to sell to fellow prisoners, Dr. Menon informed McNeill on October 1, 2010 that he would be weaned off the drug. *Id.*, Exhibit A at ¶¶ 12-13.

McNeill received salsalate on July 2, 2010, and received a knee brace on July 13, 2010. On July 13, Physicians Assistant Crystal Swecker received a videotape showing McNeill walking outside without difficulty, limp, or evidence of discomfort while keeping pace with fellow prisoners. Swecker and Menon reviewed the tape and agreed that McNeill no longer needed a knee brace and cane. Menon also discontinued prescribing salsalate after McNeill told him it did not work. The brace and cane were confiscated by Registered Nurse Kristi Whitehair on July 19, 2010. On July 24, 2010, McNeill submitted a sick call slip complaining of extreme pain and asking about pain management referral. He did not appear when summoned for sick call. *Id.*, Exhibit A at ¶ 11.

On October 1, 2010, McNeill was seen by Menon in the Chronic Care Clinic for hypertension follow-up. McNeill complained of persistent pain and indicated he had received no follow-up to McDonald's finding that his ACL might be torn. Menon advised McNeill to order any NSAIDs available in the commissary for pain relief. Steps were taken to reschedule McNeill for a follow-up appointment with his orthopedic surgeon. *Id.*, Exhibit A at ¶ 13.

On October 29, 2010, McNeill returned to BSH for examination by Dr. Krishnaswamy. McNeill told Krishnaswamy about the fall and complained of increasing pain, weakness and locking in the knee. Examination revealed tenderness on the side and middle of the knee that increased with bending, rotating and extension. Two tests performed on the knee suggested an ACL tear. McNeill also exhibited moderate weakness of the quadriceps (thigh) muscles. Krishnaswamy noted that at the time of the June surgery McNeill had a partial tear of the ACL, opined the ACL might have torn further, and recommended MRI study. Krishnaswamy also recommended that McNeill be fitted with a kneecap stabilizing brace, be given a cane, receive

hydrocodone, a narcotic, for pain, and return to him for follow-up immediately after the MRI was done. *Id.*, Exhibit A at ¶ 14.

Menon received and reviewed Krishnaswamy's consultation report on November 4, 2010, and submitted a request for MRI study. Menon also asked Whitehair to order the knee brace and cane.[6] Menon deferred the recommendation for narcotic analgesics due to the previous report that McNeill was selling his methadone to other prisoners. The MRI was approved on November 8, 2010, and performed on November 23, 2010. It showed complete disruption of the ACL, tearing of the medial meniscus, and injury to the back of the patella with a non-displaced (not out-of-position) fragment. *Id.*, Exhibit A at ¶ 16. On November 29, 2010, McNeill complained he had not received the pain medication recommended by Krishnaswamy and that he had not received the proper knee brace. The new brace and a cane were provided. *Id.*, Exhibit A at ¶ 17.

On December 6, 2010, the orthopedic follow-up consultation was approved. Three days later Swecker prescribed the NSAID Naproxen for pain. On December 17, 2010, Krishnaswamy evaluated McNeill and recommended an arthroscopy to confirm the tear of the ACL and to correct the internal derangement caused by the medial meniscus tear. Krisnawamy also noted that if the ACL were completely torn, McNeill might need ACL ligament reconstruction in the future. A patellar-stabilizing knee brace and methadone were recommended for pain relief. When returned to RCI on December 20, 2010, McNeill refused Naproxen, stating it was not effective. The next day Menon requested that McNeill undergo left knee arthroscopy by Krishnaswamy and be evaluated by Hanger Orthotics for the knee brace. Menon attempted unsuccessfully to call Krishaswamy to discuss his reluctance to prescribe narcotics for McNeill. *Id.*, Exhibit A at ¶ 18.

---

[6] The knee brace and cane were received on November 12, 2010. *Id.*, Exhibit A at ¶ 15.

On December 27, 2010, McNeill submitted a sick call slip complaining of severe pain and demanding methadone as recommended by Krisnaswamy. Registered Nurse Christine Fuller evaluated him on January 2, 2011, and noted McNeill was nasty and aggressive toward her. McNeill again refused Naproxen. Fuller advised McNeill had the knee brace had been ordered and that because RCI was on lockdown in December many appointments had been delayed. *Id.*, Exhibit B at 79-80.

Wexford Health Services, Inc. ("Wexford"), the utilization review contractor for the State of Maryland responsible for approving consultations and certain medical treatments for prisoners, deferred surgery to see if the brace helped the knee. *Id.*, Exhibit A at ¶ 19. On January 5, 2011, McNeill was transferred to the Maryland Correctional Training Center ("MCTC") and no longer is under Menon's care. *Id.*, Exhibit A at ¶ 20. There is no indication that surgery has been approved.

The parties do not deny that a torn ACL causing pain is a serious medical condition sufficient to satisfy the objective element of the Eighth Amendment standard under *Estelle*. What remains at issue is whether McNeill has satisfied the subjective element by showing "deliberate indifference" on the part of health care providers.[7]

As early as June 21, 2010, a physicians assistant noted that McNeill exhibited signs of a possible ACL tear. Three months later McNeill told Menon that nobody had followed up on the physicians assistant's assessment. Steps were then taken to reschedule McNeill for a follow-up appointment with his orthopedic surgeon.

Tests performed by the orthopedic surgeon on October 29, 2010 suggested McNeill had fully torn the partially torn ACL already present at the time of the original June 1, 2010 surgery.

---

[7] The Court expresses no opinion as to whether additional medical personnel or medical contractors played a role in delaying or denying McNeill treatment for his ACL injury.

An MRI performed on November 23, 2010 demonstrated complete disruption of the ACL, tearing of the medial meniscus, injury to the back of the knee and the presence of a fragment. The orthopedic surgeon recommended arthroscopy to confirm the tear and correct some damage pending full repair in December, 2010. The request was deferred by the utilization review contractor, Wexford. During this time, McNeill continued to complain of severe pain not relieved by NSAIDs. Nothing in the record suggests the surgery recommended by the orthopedic specialist has been provided, nor explains whether the more conservative approach (use of a knee brace) has resolved McNeill's painful orthopedic problem. The Court will require additional medical records in order to determine whether McNeill has met his burden establishing deliberate indifference to an ongoing serious medical need.

III.  CONCLUSION

For these reasons, the Correctional Defendants' motion for summary judgment shall be granted and the unidentified "Doe" and "Safety Department Supervisor" Defendants dismissed, and the Medical Defendants' motion for summary judgment shall be granted as to Defendant CMS and otherwise denied without prejudice to the prompt filing of a supplemental dispositive motion. McNeill's request for jury trial shall be denied without prejudice. A separate Order follows.

Date: 9/7/11

William D. Quarles, Jr.
United States District Judge